UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN WEATHERWAX, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:19cv1502(KAD) |
| | : | |
| WARDEN KRISTINE BARONE, ET AL., | : | |
| Defendants. | : | |

## **INITIAL REVIEW ORDER**

**Preliminary Statement**

*Pro se* Plaintiff, John Weatherwax ("Weatherwax"), currently incarcerated at the

MacDougall-Walker Correctional Institution ("MacDougall-Walker") brings this civil rights

complaint against Warden Kristine Barone, Deputy Warden Jeannotte, Captain Claudio and

Nurse Jane Doe. He claims that in June 2019, the defendants failed to protect him from assault

by his cellmate and/or were deliberately indifferent to his medical needs thereafter, all in

violation of the Eighth Amendment prohibition against cruel and unusual punishment. Upon

initial review, the complaint is dismissed in part.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints

against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of

Civil Procedure requires that a complaint contain "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**Allegations**

On December 6, 2018, a judge in the Connecticut Superior Court for the Judicial District of Hartford, sentenced Weatherwax to a total effective term of imprisonment of four years. *See State v. Weatherwax*, Case No. HHD-CR18-0175641-T.[1] On December 17, 2018, prison officials at Hartford Correctional Center transferred Weatherwax to the Walker Building at MacDougall-Walker. Compl., ECF No. 1, at 2 ¶ 3. On April 26, 2019, prison officials in the Walker Building transferred Weatherwax to the MacDougall Building. *Id.* ¶ 4.

On June 20, 2019, Weatherwax sent an inmate request to Warden Barone and Deputy Warden Jeannotte indicating that his cellmate had made threatening and violent statements and

---

[1] The State of Connecticut's Judicial Branch website reflects that Weatherwax pleaded guilty to one count of robbery in the first degree on October 11, 2018, and a judge sentenced him to ten years of imprisonment, execution suspended after four years and followed by three years of probation on December 6, 2018. This information may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor

gestures towards him.  *Id.* at 4 ¶ 13.  On June 23, 2019, Weatherwax spoke to staff members working in his housing unit about his cellmate's threats and requested a cell change.  *Id.* ¶ 14.

On June 24, 2019, Weatherwax submitted an inmate request to Captain Claudio seeking to speak to her about his concerns for his safety due to his cellmate's threats and mental health issues and history of violence within the Department of Correction.  *Id.* ¶ 15.  On June 25, 2019, Weatherwax's cellmate threatened to break Weatherwax's legs if he did not stop acting in a "suspect" manner and mentioned that he had broken another inmate's leg during his confinement at Osborn Correctional Institution.  *Id.* ¶ 16.  Weatherwax's cellmate continued to threaten to harm Weatherwax until June 30, 2019.  *Id.* ¶ 17.

On June 28, 2019, Weatherwax informed a lieutenant in his housing unit about his cellmate's threats and sought to be moved to another cell.  *Id.* ¶ 18.  The lieutenant indicated that he and other staff members were aware of the situation and that an email had been sent to Warden Barone and Deputy Warden Jeannotte regarding the matter.  *Id.*  The lieutenant informed Weatherwax that Warden Barone and Deputy Warden Jeannotte would decide whether to move him to a different cell.  *Id.*

On June 30, 2019, at 12:40 a.m., Weatherwax's cellmate kneed, kicked, punched, elbowed and choked Weatherwax, slammed his face into the bunk and tried to break his leg.  *Id.* at 5 ¶¶ 19-20.  The assault occurred in Weatherwax's cell and continued for about twenty-five minutes until a correctional officer called a code to summon other officers to the scene.  *Id.* ¶¶ 19, 21.

Weatherwax suffered the following injuries: blurry vision, pain in his jaw, a headache, bruised and painful ribs, difficulty breathing, swelling, bleeding and bruising to his face, a

bloody nose and lacerations to his cheek. *Id.* ¶ 23. Nurse Jane Doe assessed, evaluated and provided treatment for some of Weatherwax's injuries but did not assess or treat his bruised and painful ribs. *Id.* ¶ 24. She suggested that he submit a separate request to have his ribs evaluated. *Id.* at 6 ¶ 25.

Prison officials placed Weatherwax in the restrictive housing unit and issued him a disciplinary report for fighting. *Id.* ¶ 26. Weatherwax was successful in challenging the report and prison officials released him from the restrictive housing unit on August 5, 2019. *Id.* ¶ 27. Upon his release, Weatherwax sought treatment for his bruised and painful ribs. *Id.* ¶ 28. An x-ray confirmed that Weatherwax's ribs were broken. *Id.* ¶ 29. Weatherwax continues to suffer sharp pain and other symptoms from the injuries that he suffered as a result of the assault. *Id.* ¶ 30.

**Discussion**

Weatherwax alleges that Warden Barone, Deputy Warden Jeannotte and Captain Claudio were deliberately indifferent to his health and safety and Nurse Jane Doe was deliberately indifferent to his medical needs in violation of the Eighth Amendment. He seeks declaratory relief and compensatory damages and sues the defendants in their individual capacities only.

### Request for Declaratory Relief

Weatherwax seeks a declaratory judgment "informing the defendants that (mixing mentally ill inmates with those who are not mentally ill may violate the rights of both groups)." For support, Weatherwax cites a district court case from the District of the Virgin Islands, *Carty v. Farrelly*, 957 F. Supp. 727, 738-39 (D. Vi. 1997). *See* Compl. at 8 ¶ 40.

In assessing the appropriateness of declaratory relief, a court must consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." *Dow Jones & Co., Inc. v. Harrods Ltd.,* 346 F.3d 357, 359 (2d Cir. 2003) (citation omitted). Weatherwax's claim of deliberate indifference to health and safety is based on his allegations that: his cellmate made threats to harm him physically; he informed the defendants that he feared for his safety; the defendants failed to take steps to protect him from harm, and he suffered numerous injuries when his cellmate assaulted him. Weatherwax further alleges that several days prior to the assault, he requested to speak to Captain Claudio about his cellmate's threats as well as his violent history and mental health. He does not otherwise mention or describe his cellmate's mental health or indicate whether he, in fact, suffers from a mental health condition. Thus, the issue of whether it is constitutional for prison officials to confine inmates with mental health diagnoses in the same cells or housing units with inmates who have not been diagnosed as suffering from a mental health condition is not before the court. Because the declaration Weatherwax seeks will not clarify the legal issues raised in the complaint, the request for declaratory relief is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Eighth Amendment - Deliberate Indifference to Health and Safety

Weatherwax alleges that Warden Barone, Deputy Warden Jeannotte and Captain Claudio failed to protect him from assault by his cellmate after he informed them on multiple occasions prior to the assault that his cellmate had threatened to cause him physical harm. To the extent that a prisoner's conditions of confinement are "restrictive or even harsh," they do not violate the Eighth Amendment because "they are part of the penalty that criminal offenders pay for their

offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although the Constitution does not require "comfortable" prison conditions, it does not permit prison officials to maintain conditions which inflict "unnecessary and wanton pain" or which result in the "serious deprivation of basic human needs ... or the minimal civilized measure of life's necessities." *Id.* In addition, the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody" and "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).

To state a claim of failure to protect or deliberate indifference to health or safety due to unconstitutional conditions of confinement, an inmate must allege objective and subjective elements. Objectively, the inmate must allege that he was incarcerated under a condition or a combination of conditions that resulted in a "sufficiently serious" deprivation of a life necessity or a "human need[]" or posed "a substantial risk of serious harm" to his health or safety. *Farmer*, 511 U.S. at 834; *Rhodes*, 452 U.S. at 347. Subjectively, an inmate must allege that the defendants possessed culpable intent; that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See Farmer*, 511 U.S. at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that the inmate allege that the defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Weatherwax alleges that his confinement in a cell with an inmate who had repeatedly threatened to harm him physically and then followed through with this threat constituted a

condition that posed a substantial risk of serious harm to his health and safety. *See Farmer*, 511 U.S. at 834 ("Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society'") (quoting *Rhodes*, 452 U.S. at 347). The Court agrees.

As to the Defendants' conduct, Weatherwax alleges that within the ten-day period prior to the assault, he submitted written requests to Captain Claudio, Warden Barone and Deputy Warden Jeannotte regarding his cellmate's threats to harm him. In addition, as of June 28, 2019, an email had been sent to Warden Barone and Deputy Warden Jeannotte regarding these threats and Weatherwax's request to be moved to a different cell. Two days later, Weatherwax's cellmate assaulted him. Weatherwax suffered numerous injuries.

Accordingly, Weatherwax has stated a plausible claim that Warden Barone, Deputy Warden Jeannotte and Captain Claudio were aware of the risk of harm that his confinement with his cellmate posed to his health and safety and they failed to take measures to abate the harm. He has therefore also adequately alleged the subjective element of his Eighth Amendment claim.

### Eighth Amendment – Deliberate Indifference to Medical Needs

Weatherwax alleges that Nurse Jane Doe was deliberately indifferent to the injuries that he suffered to his ribs as a result of the assault. The Eighth Amendment prohibits deliberate indifference by medical providers to an inmate's serious medical needs. *See Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) ("The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners . . . which includes needs for mental health care.") (internal quotation marks and citations omitted). For this claim to succeed, objectively, the inmate must allege that his medical need or condition is "a serious one." *Brock v*

*Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Factors relevant to the seriousness of a medical condition include whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Subjectively, the plaintiff must allege that the medical staff member or prison official "act[ed] or fail[ed] to act while *actually aware* of a substantial risk that serious inmate harm w[ould] result." *Spavone*, 719 F.3d at 138 (internal quotation marks and citation omitted). Mere negligent conduct does not constitute deliberate indifference. *See Salahuddin*, 467 F.3d at 280 ("[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent."); *Hernandez v. Keane,* 341 F.3d 137, 144 (2d Cir. 2003) (medical malpractice alone does not amount to deliberate indifference).

Weatherwax asserts that his ribs were painful and bruised after the assault. Nurse Jane Doe treated some of his injuries but refused to evaluate or treat the injuries to his ribs. She advised Weatherwax file a separate request seeking treatment for injuries to his ribs. But Weatherwax could not submit a request for treatment of his painful ribs until his release from the restrictive housing unit. Weatherwax alleges that he experienced severe pain in his ribs during the six days that he remained in the restrictive housing unit.

Accordingly, Weatherwax has stated a plausible claim that he suffered from a serious medical condition – bruised, painful and broken ribs – and that Nurse Jane Doe's refusal to treat his symptoms and condition constituted deliberate indifference.

**ORDERS**

8

The court enters the following orders:

(1) The request for declaratory relief is dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The Eighth Amendment claim of deliberate indifference to health and safety will proceed against Warden Barone, Deputy Warden Jeannotte and Captain Claudio in their individual capacities and the Eighth Amendment deliberate indifference to medical needs claim will proceed against Nurse Jane Doe in her individual capacity.

The court notifies Weatherwax that the Clerk cannot serve the complaint on Nurse Jane Doe because he has not provided the first or last name of this defendant. The court will permit Weatherwax until February 21, 2020 to conduct discovery and to file a notice identifying the Jane Doe defendant by her first name and last name. Pursuant to Rule 4(m), Fed. R. Civ. P., the court will dismiss the claims against Nurse Jane Doe if Weatherwax does not provide notice to the Clerk of her first and last name within the time specified.

(2) On or before December 12, 2019, the Clerk shall verify the current work addresses of: Warden Kristine Barone, Deputy Warden Jeannotte and Captain Claudio and mail a copy of the complaint, this order, and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her confirmed address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Defendants Barone, Jeannotte and Claudio shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice

of lawsuit and waiver of service of summons forms are mailed to them.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above.  They may also include any and all additional defenses permitted by the Federal Rules.

(4)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed on or before May 21, 2020. Discovery requests need not be filed with the court.

(5)     All motions for summary judgment shall be filed on or before June 21, 2020.

(6)     The Clerk shall send a copy of the complaint and this order to the Connecticut Attorney General and to the Department of Correction Legal Affairs Unit.

(7)     The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

SO ORDERED at Bridgeport, Connecticut this 21st day of November, 2019.

_/s/_____
Kari A. Dooley
United States District Judge