UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN WEATHERWAX,<br>    Plaintiff, | :<br>:<br>: |
| v. | : Case No. 3:19cv1502(KAD) |
| | : |
| WARDEN KRISTINE BARONE, ET AL.,<br>    Defendants. | :<br>: |

## RULING ON MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANT SCOTT-HINTON

**Preliminary Statement**

The plaintiff, John Weatherwax ("Weatherwax"), a sentenced inmate confined at the Garner Correctional Institution in Newtown, Connecticut, initiated this civil rights action against Warden Kristine Barone, Deputy Warden Jeannotte, Captain Claudio, and Registered Nurse Jane Doe. Upon initial review pursuant to 28 U.S.C. § 1915A(b), the court permitted the Eighth Amendment deliberate indifference to health and safety claim to proceed against Warden Barone, Deputy Warden Jeannotte, and Captain Claudio in their individual capacities and the Eighth Amendment deliberate indifference to medical needs claim against Nurse Jane Doe in her individual capacity. Weatherwax subsequently sought leave to file an amended complaint against Registered Nurse Alice Scott-Hinton, formerly listed in the complaint as Registered Nurse Jane Doe, and the Department of Correction and to withdraw his claims against all other defendants named in the complaint. On April 6, 2020, the court granted the motion to amend; reviewed the allegations asserted in the amended complaint; dismissed all claims against the Department of Correction, dismissed the claim seeking monetary damages for violations of Weatherwax's Eighth Amendment rights by Nurse Scott-Hinton in her official capacity, dismissed the Eighth Amendment claim that Nurse Scott-Hinton was deliberately indifferent in

treating the laceration to Weatherwax's face; but concluded that the Eighth Amendment claim that Nurse Scott-Hinton, in her individual capacity, was deliberately indifferent to an injury to Weatherwax's left ribs could proceed.  *See* ECF Nos. 20, 21.

Defendant Scott-Hinton moves for summary judgment as to the Eighth Amendment claim that proceeds against her.  For the reasons set forth below, the motion is granted.

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017).  "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Which facts are material is determined by the substantive law.  *Anderson*, 477 U.S. at 248.  "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense. . . ."  *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material

fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (internal quotation marks and citation omitted).  To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor.  *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**[1]

Alice Scott-Hinton is a registered nurse employed by the State of Connecticut Department of Correction who worked at MacDougall-Walker Correctional Institution from February 2012 until April 2020.  Def's. L.R. 56(a)1 ¶¶ 1-2.

---

[1] The facts are taken from the Defendant's Local Rule 56(a) Statement ("Def's. L.R. 56(a)1"), [ECF No. 44-1], and Exhibits 1 through 3, [ECF. Nos. 44-3 to 44-5], filed in support of the Local Rule 56(a)1 Statement. Local Rule 56(a)2 requires the party opposing summary judgment to submit a Local Rule 56(a)2 Statement which contains separately numbered paragraphs corresponding to the paragraphs set forth in the moving party's Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party in each paragraph.  Each admission or denial must include a citation to an affidavit or other admissible evidence.  In addition, the opposing party must submit a list of disputed factual issues.  D. Conn. L. Civ. R. 56(a)2 and 56(a)3.
    Defendant Scott-Hinton informed Weatherwax of these requirements.  *See* Notice to Self-Represented Litigant Concerning Motion for Summary Judgment, ECF No. 44-6.  Although Weatherwax has filed a memorandum in opposition to the motion for summary judgment that includes responses to Scott-Hinton's Local Rule 56(a)1 Statement, the responses lack citations to an affidavit or declaration or other admissible evidence.  *See* ECF No. 54 at 1-5.  Because Weatherwax has not filed a proper Local Rule 56(a)2 Statement, the Defendant Scott-Hinton's facts are deemed admitted.  *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2.").
    The court also considers the verified Amended Complaint, ECF No. 21, which may be considered as an affidavit for summary judgment purposes.  *See Curtis v. Cenlar* FSB, 654 F. App'x 17, 20 (2d Cir. 2016) ("Though we may treat [plaintiff's] verified complaint 'as an affidavit for summary judgment purposes,' the allegations contained therein can suffice to defeat summary judgment only insofar as they were made on personal knowledge.") (quoting *Conlon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

On June 29, 2019, Weatherwax, a sentenced inmate, was confined in a cell in Q-Pod in the MacDougall Building of MacDougall-Walker Correctional Institution. Am. Compl., ECF No. 21, at 2 ¶ 6. At 12:30 a.m. on June 30, 2019, Weatherwax's cellmate assaulted him. *Id.* At approximately 1:20 a.m., Nurse Scott-Hinton assessed Weatherwax for injuries. Def's. L.R. 56(a)1 ¶ 4. Weatherwax was bleeding from a laceration on the left side of his face and complained about other issues, including pain in one of his fingers and pain in his left ribs. *Id.* ¶¶ 5, 8. Nurse Scott-Hinton's primary concerns were to stop the bleeding and to determine whether the laceration required Weatherwax's transfer to a hospital for sutures or whether she could clean, dress, and close the wound with the medical supplies that were available to her. *Id.* ¶ 6. Nurse Scott-Hinton assessed the severity of the wound and concluded that it did not require treatment at a hospital and that she could clean and close the wound using Steri-Strips. *Id.* ¶ 7.

After cleaning Weatherwax's facial laceration and applying Steri-Strips to close the wound, Nurse Scott-Hinton asked Weatherwax about his complaint pertaining to pain in one of his fingers. *Id.* ¶ 8. Weatherwax indicated again that his finger hurt. *Id.* Nurse Scott Hinton checked for swelling and range of motion. Based on her examination, Scott-Hinton determined that Weatherwax's finger did not require treatment. *Id.*

An officer who had accompanied Weatherwax to the medical department asked Scott-Hinton if she was finished with Weatherwax. *Id.* ¶ 9. Scott-Hinton indicated that she had finished with her assessment and treatment of Weatherwax's injuries and that he could be escorted from the medical department. *Id.* Nurse Scott-Hinton did not examine Weatherwax's ribs during her assessment of his injuries on June 30, 2019. *Id.* She did not receive any inmate requests from Weatherwax seeking treatment for his rib pain and did not treat Weatherwax at

4

any other time after June 30, 2019.  *Id.* ¶¶ 11-12.

An officer escorted Weatherwax from the medical department to a cell in the restrictive housing unit.  Am. Compl., ECF No. 21, at 5 ¶ 22.  Weatherwax remained in the restrictive housing unit for fifteen days.  *Id.* ¶ 23.  During his confinement in the restrictive housing unit, Weatherwax complained every day about pain that he was experiencing in his left ribs.  *Id.*

Weatherwax's medical records reflect that on July 8, 2019, a mental health provider met with him.  *Id.* ¶ 14.  The mental health provider's notation does not include complaints by Weatherwax about rib pain.  *Id.*  On July 16, 2019, Weatherwax submitted an inmate request seeking dental care.  *Id.* ¶ 15; ECF No. 46, Ex. 1, Attach. B (Medical Records at 7).  Weatherwax did not mention rib pain in the request.  *Id.*

On July 18, 2019, a nurse called Weatherwax to the medical department for a sick call/prompt care visit.  *Id.* ¶ 16; ECF No. 46, Ex. 1, Attach. B (Medical Records at 8).  Weatherwax did not show up for the visit.  *Id.*  In completing a medical incident report on July 21, 2019, Registered Nurse Burns noted that Weatherwax complained of no injuries.  *Id.* ¶ 17; ECF No. 46, Ex. 1, Attach. B (Medical Records at 10).  On July 14, 2019, Weatherwax submitted an inmate request to Regional Chief Operating Officer Shea complaining that he had been involved in an altercation with his cellmate and had suffered an injury to his ribs and a laceration to his face and had not received treatment for the injuries.  *Id.* ¶ 18; ECF No. 46, Ex. 1, Attach. B (Medical Records at 11-12).  On July 23, 2019, in response to this request, RCOO Shea indicated that his medical records reflected that a nurse had examined him after the incident and that a subsequent appointment with a medical provider had been scheduled but he had refused to attend the appointment.  *Id.*

On July 28, 2019 and on August 1, 2019, nurses called Weatherwax to the medical department for a sick call/prompt care visit. *Id.* ¶¶ 19-20; ECF No. 46, Ex. 1, Attach. B (Medical Records at 13-14). Weatherwax refused to attend both visits because he did not think he should have to pay the $3.00 co-pay for a visit to discuss a pre-existing injury. *Id.*

On August 4, 2019, Weatherwax submitted an inmate request for mental health care pertaining to symptoms he had experienced following the June 30, 2019 altercation with his cellmate. *Id.* ¶ 22; ECF No. 46, Ex. 1, Attach. B (Medical Records at 17). Weatherwax did not mention that he had suffered an injury to his ribs or that he was experiencing pain in his ribs in the request. *Id.*

On August 5, 2019, Registered Nurse Hite examined Weatherwax during a sick call/prompt care appointment. *Id.* ¶ 23. During the appointment, Weatherwax complained about rib pain. *Id.* Nurse Hite entered an order that Weatherwax undergo x-rays of his ribs and prescribed acetaminophen for pain. *Id.* Weatherwax underwent x-rays of his ribs later that day. *Id.* ¶ 24; ECF No. 46, Ex. 1, Attach. B (Medical Records at 22). The x-rays revealed: "mildly displaced left lateral seventh rib and nondisplaced left lateral eighth rib fractures with associate callous formation." *Id.*

**Discussion**

Defendant Scott-Hinton asserts three arguments in support of her motion for summary judgment. She contends that Weatherwax failed to exhaust remedies available under State of Connecticut Department of Correction Administrative Directive 8.9 prior to filing this lawsuit; she was not deliberately indifferent to a serious medical need; and she is entitled to qualified immunity.

**Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S.___, 136 S. Ct. 1850, 1858 (2016). The Supreme Court described three situations in which official prison administrative remedies might be unavailable because the procedures could not be used by an inmate to obtain relief for the conduct or conditions complained about. *Id.* 1859-60. First, an administrative remedy may be unavailable when "it operates as a simple dead end— with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically

speaking, incapable of use" because an "ordinary prisoner can[not] discern or navigate it" or "make sense of what it demands." *Id.* (citations omitted). Third, an administrative remedy may be unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Exhaustion of administrative remedies is an affirmative defense. Thus, Scott-Hinton bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007). On January 20, 2021, she filed an answer to the amended complaint raising the defense of failure to exhaust administrative remedies. *See* ECF No. 38. Once a defendant establishes that administrative remedies were not exhausted before the plaintiff commenced the action, the plaintiff must establish that the administrative remedy procedures were not available to him under *Ross*.

There is no dispute that the administrative remedies for medical care claims are set forth in State of Connecticut Department of Correction Administrative Directive 8.9, entitled Administrative Remedy for Health Care, and were in effect as of June 30, 2019 when Weatherwax was involved in an altercation with his inmate and was assessed by Nurse Scott-Hinton. *See* Def's. L.R. 56(a)1 ¶ 25; ECF No. 44-5, Ex. 2, Attach. A (Admin. Dir. 8.9, in effect as of July 24, 2012). Nor does Weatherwax dispute that he was familiar with the Administrative Remedies procedures set forth in that Directive prior to and after the altercation with his cell mate on June 30, 2019. *See* Compl. at 3; Mem. Opp'n Mot. Summ. J., ECF No. 54, at 5.

Administrative Directive 8.9 provides Health Services Review procedures to address two types of issues or claims related to the medical, dental, or mental health care of an inmate: (1) Diagnosis and Treatment issues and (2) Administrative health care issues involving a procedure, practice, policy, or the improper conduct of a health services provider. *See*

8

Administrative Directive 8.9(9)(A) & (B).

An inmate seeking review in either circumstance, must first attempt to seek informal resolution either by speaking to the appropriate staff member or by sending a written request to a supervisor. *Id.* at 8.9(10) The supervisor must respond to a written attempt at informal resolution within fifteen calendar days of receipt of the request. *Id.* If the informal resolution of the inmate's issue is unsatisfactory or unsuccessful, the inmate may apply for a Health Services Review using the Inmate Administrative Remedy Form, CN 9602, and checking off either the Diagnosis/Treatment box or the All Other Health Care Issues box for an administrative issue. *Id.* at 8.9(11) & (12).

As is at issue here, if the inmate seeks review of a diagnosis or the treatment or lack of treatment of a medical, dental or mental health condition, the Health Services Review Coordinator is required to schedule a Health Services Review Appointment with a physician, dentist, psychologist, psychiatrist, or advanced practice registered nurse ("APRN"), as appropriate, as soon as possible. *Id.* at 8.9(11)(A). If, after the appointment, the physician, dentist, psychologist, psychiatrist or APRN concludes that the existing diagnosis or treatment is appropriate, the inmate is deemed to have exhausted his or her health services review remedy. *Id.* If the physician, dentist, psychologist, psychiatrist or APRN reaches a different conclusion with regard to the appropriate diagnosis or course of treatment for the inmate's condition, he or she may either provide the appropriate diagnosis or treatment or refer the case to the Utilization Review Committee for authorization indicating the need for different treatment. *Id.* at 8.9(11)(B).

Defendant Scott-Hinton argues that Weatherwax made no attempt to exhaust his

9

available administrative remedies under Administrative Directive 8.9 as to his claim that on June 30, 2019, she was deliberately indifferent to his complaint of rib pain. In support of this argument, she has submitted the Declaration of Health Services Review Coordinator Rosalee Walker. *See* Def's. L.R. 56(a)1, ECF No. 44-4, Ex. 2.

Health Services Review Coordinator Walker reviewed the Health Services Review database from January 1, 2019 to February 19, 2021 and found two requests for Health Services Review filed by Weatherwax during that period. Walker Decl. ¶¶ 3-6; Ex. 46-1. The first request was filed on August 31, 2019 and pertained to dental treatment. *Id.* ¶ 5. The second request was filed on October 22, 2020 and pertained to mental health treatment and a change in the dosage of mental health medication. *Id.* ¶ 6. Health Services Review Coordinator Walker found no requests for Health Services Review addressed to Nurse Scott-Hinton's alleged failure to assess and provide treatment for Weatherwax's rib pain on June 30, 2019. *Id.* ¶ 7.

In his memorandum in opposition to the motion for summary judgment, Weatherwax states that he filed two medical grievances regarding Nurse Scott-Hinton's alleged failure to provide him treatment on June 30, 2019 but that he did not receive responses to these grievances. Mem. Opp'n Mot. Summ. J., ECF No. 54 at 5. He does not indicate when he placed these two medical grievances in the administrative remedies box, whether he received receipts for the grievances or submitted a request to the administrative remedies coordinator at MacDougall-Walker Correctional Institution regarding the status of the disposition of the grievances, or otherwise pursued the medical grievances any further. Nor has he submitted copies of the medical grievances or any other evidence to support his assertion that he filed the medical grievances. Thus, he has offered no evidence to dispute the Declaration of Health Services

Coordinator Walker that there is no record of any Health Services Reviews filed by Weatherwax pertaining to his treatment by Nurse Scott-Hinton.

Weatherwax's unsworn and unverified statement that he did file such medical grievances does not create a genuine dispute of an issue of material fact as to whether he exhausted his administrative remedies under Administrative Directive 8.9 prior to filing this action. *See, e.g.*, *Johnson v. Conley*, No. 3:17-CV-00070 (JAM), 2018 WL 4224076, at *5–6 (D. Conn. Sept. 5, 2018) ("Osborn Correctional Institution has no record of any grievance of appeal. . . .The foregoing casts doubt on whether these grievances were ever filed.") (citing *Chambers v. Johnpierre*, No. 3:14CV1802(VAB), 2016 WL 5745083, at *7 (D. Conn. Sept. 30, 2016) (inmate's "unsupported statements that he filed grievances and grievance appeals ... do not create an issue of fact with regard to the exhaustion of his claims") (citing, *inter alia*, *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("To defeat summary judgment[,] nonmoving parties ... may not rely on conclusory allegations or unsubstantiated speculation"))). Nor has Weatherwax asserted that administrative remedies were unavailable to him. Accordingly, the motion for summary judgment is granted on the ground that Weatherwax did not exhaust his available remedies as to the Eighth Amendment deliberate indifference to medical needs claim asserted against Nurse Scott-Hinton prior to filing this action.

**Deliberate Indifference to Medical Needs**

Nurse Scott-Hinton argues that even if Weatherwax did exhaust his available remedies as to the claim asserted against her, he cannot establish that her conduct constituted deliberate indifference to a serious medical need. Weatherwax contends that Scott-Hinton, as a nurse, should have recognized and treated the injury to his ribs without his having to remind her about

11

it.

The Eighth Amendment prohibits "deliberate indifference to an inmate's serious medical needs." *Estelle v Gamble*, 429 U.S. 97, 104 (1976). An inmate must meet two elements to state a claim that a medical provider was deliberately indifferent to his medical needs. The first element requires the inmate to assert facts to demonstrate that his medical need or condition is objectively serious. *Hill v. Curcione*, 657 F.3d 116, 122–23 (2d Cir. 2011) (a serious medical need contemplates "a condition of urgency" such as "one that may produce death, degeneration, or extreme pain") (internal quotation marks and citation omitted). In determining whether a condition is serious, the court considers whether "a reasonable doctor or patient would find [it] important and worthy of comment," whether the condition "significantly affects an individual's daily activities," and whether it causes "chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted).

The second element requires the inmate to prove that the medical provider "act[ed] with a sufficiently culpable state of mind." *Hill*, 657 F.3d at 122 (citation omitted). This state of mind may be shown by the assertion of facts suggesting that the medical provider was aware that his actions or inactions would cause a substantial risk of serious harm. *Id.* ("[T]he official must "'know[ ] of and disregard[ ] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'") (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). Mere negligent conduct or malpractice, however, does not constitute deliberate indifference. *See Hill*, 657 F.3d at 123 ("'a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

12

under the Eighth Amendment.'") (quoting *Estelle*, 429 U.S. at 106); *Chance*, 143 F.3d at 703 ("Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim.") (citation omitted).

Even assuming *arguendo,* that the injury causing pain in Weatherwax's left ribs was sufficiently serious, the facts and evidence submitted by Nurse Scott-Hinton establish that she did not have the state of mind necessary to establish an Eighth Amendment deliberate indifference claim. Scott-Hinton declares that her failure to assess Weatherwax's complaints of left rib pain and/or to examine his ribs was inadvertent. Scott-Hinton Decl. ¶ 11. Her focus was on the laceration on his face that was bleeding and assessing the severity of the injury and the need for treatment of the injury by medical providers at an outside hospital. *Id.* ¶¶ 6-7. She states that although Weatherwax initially mentioned his rib pain, he did not mention it again after she had treated his facial laceration and had assessed the pain in one of his fingers. *Id.* ¶ 11. She did not treat or assess Weatherwax after June 30, 2019 or receive any requests for treatment from Weatherwax for rib pain. *Id.* ¶¶ 12-13. As noted above, these statements are deemed admitted.

Nurse Scott-Hinton's inadvertent failure to assess Weatherwax's complaint of rib pain on one occasion does not evince a culpable state of mind or callous disregard of an "excessive risk to inmate health or safety" and constitutes negligence at most. *Hill*, 657 F.3d at 122. Negligence, however, does not meet the subjective prong of the Eighth Amendment deliberate indifference standard. *Id.* at 123. Nurse Scott-Hinton has met her burden of demonstrating the absence of a genuine dispute as to a material fact as to whether she acted with deliberate indifference. The motion for summary judgment is granted on this ground as well, and in the alternative.

**Conclusion**

       Defendant Scott-Hinton's Motion for Summary Judgment, [**ECF No. 44**], is **GRANTED.**

The Clerk is directed to enter judgment for the defendant and to close this case.

       SO ORDERED at Bridgeport, Connecticut this 9th day of September, 2021.

                                        _____/s/_____
                                        Kari A. Dooley
                                        United States District Judge